## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LITCHFIELD ASSOCIATES LTD. INC.

       Plaintiff,

v.

CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, INTELLECTUAL
RESERVE, INC., DESERET BOOK COMPANY,
STANDARD WORKS, LLC, and INBLOSAM, LLC,

       Defendants.

_____/

Case No. 8:14-cv-1387-T-33AEP

## COMPLAINT

Plaintiff, Litchfield Associates Ltd. Inc., sues Defendants, Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., Deseret Book Company (collectively, the "Mormon Church"), Standard Works, LLC, and Inblosam, LLC, (collectively, "Defendants") and states:

## NATURE OF THE CASE

1.      Plaintiff, Litchfield Associates Ltd. Inc. ("Litchfield"), became obligated to file this action upon learning of the violation of its intellectual property rights by The Church of Jesus Christ of Latter-day Saints and its affiliated entities.

2.      In addition to its widespread direct copyright infringement and other improper conduct, as described below, the Mormon Church has sanctioned and contributed to multiple other parties reaping extraordinary financial benefits selling Litchfield's copyrighted material – unique sound recordings of the Holy Bible narrated by Alexander Scourby, known as the greatest voice ever recorded.

3.      The Defendants have taken Litchfield's intellectual property and distributed it worldwide, depriving Litchfield of the ability to control and profit from its federally registered copyrighted sound recordings. As such, Litchfield is entitled to permanent injunctive relief and damages.

## PARTIES, JURISDICTION AND VENUE

4.      This is an action for injunctive relief and damages in excess of $75,000, exclusive of attorneys' fees, costs and interest.

5.      Litchfield is a Panama private limited company with its principal place of business at 3825 Henderson Boulevard, Tampa, Florida 33629.

6.      Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints ("LDS") is a Utah corporation sole with its principal place of business in Salt Lake County, Utah at 50 East North Temple, Salt Lake City, Utah 84150. LDS is registered to transact business in Florida and maintains a registered agent in Florida. Upon information and belief, LDS controls the Mormon Church's finances and donations. As such, LDS has the power to oversee and control the Mormon Church, especially with regard to materials provided to Church members in exchange for donations. LDS does business or has done business under multiple names, including a truncated version of its full name, specifically, The Church of Jesus Christ of Latter-day Saints.

7.      Defendant Intellectual Reserve, Inc. ("Intellectual Reserve") is a Utah corporation with its principal place of business in Salt Lake County, Utah at 47 East Temple Street, Salt Lake City, Utah 84150. Intellectual Reserve maintains and enforces the Mormon Church's intellectual property, including copyrights. Intellectual Reserve is the registered owner and administrator of the Mormon Church's official website, www.lds.org (the "LDS Website").

8.     Defendant Deseret Book Company ("Deseret Book") is a Utah corporation with its principal place of business in Salt Lake County, Utah at 57 West South Temple P.O. Box 30178, Salt Lake City, Utah 84101.  Deseret Book is a wholly owned subsidiary of the holding company for businesses owned by LDS and is ultimately controlled by the ecclesiastical leadership of LDS.  Deseret Book is a for-profit corporation.

9.     Defendant Standard Works, LLC ("Standard Works") is a Utah limited liability company with its principal place of business in Utah County, Utah at 5406 W 11000 N Ste 103-418, Highland, Utah 84003.

10.     Defendant Inblosam, LLC ("Inblosam") is a Utah limited liability company with its principal place of business in Utah County, Utah at 3372 N University Ave., Provo, Utah 84604. Inblosam also does business as LDS Scriptures and LDS Scriptures App.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a).

12.     This Court has personal jurisdiction over LDS pursuant to Florida's long-arm statute, section 48.193, Florida Statutes, because LDS (a) conducts business and maintains offices and a registered agent in Florida; (b) is the largest private landowner in Florida, owning nearly 2% of the state's land mass; (c) breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida; (d) committed tortious acts in Florida and infringed upon copyrights and trademarks in Florida; and (e) participated in a conspiracy during which tortious acts were committed in Florida in furtherance of the conspiracy.

13.     Further, LDS has sufficient minimum contacts with Florida such that the due process clause and traditional notions of fair play and substantial justice are satisfied because: (a) LDS entered into a contract with Litchfield governed by Florida law and that identifies

Florida as the exclusive venue to enforce breaches of the contract; (b) LDS has two temples (one existing and one announced), five missions, 234 congregations and over 136,000 members in Florida, from which LDS receives pecuniary benefits; (c) Litchfield's claims arise out of or relate to LDS's contacts with Florida by virtue of LDS advertising, selling and distributing the infringing material into Florida and accepting payment from Florida customers for such goods; (d) LDS has purposefully availed itself of the privilege of conducting activities within Florida by soliciting business from Florida residents through its fully interactive website, www.lds.org, which includes links to download and purchase the infringing material; (e) LDS has other contacts in Florida, namely the consumers who have purchased and downloaded the infringing material and Litchfield's causes of action derive directly from those contacts; (f) LDS should have reasonably anticipated being haled into a Florida court by virtue of selling and distributing the infringing material to Florida residents; (g) Florida has a strong interest in protecting consumers from the confusion that results from trademark infringement, copyright infringement and unfair competition; and (h) Litchfield has a strong interest in resolving this dispute in its chosen forum, which is where the company's records are located and its sole officer resides.

14.     Further, LDS's copyright infringement was directly aimed at Florida because it targeted the property of a company with its principal place of business in Florida, causing injury in Florida that LDS should have reasonably anticipated.

15.     This Court has personal jurisdiction over Intellectual Reserve pursuant to Florida's long-arm statute, section 48.193, Florida Statutes, because (a) Intellectual Reserve committed tortious acts in Florida, including copyright infringement; (b) Intellectual Reserve participated in a conspiracy during which tortious acts were committed in Florida in furtherance of the conspiracy; (c) Intellectual Reserve's infringing material, in addition to its website, are

accessible in Florida; (d) Florida residents have accessed Intellectual Reserve's website and have downloaded and purchased infringing material; and (e) Florida residents have paid for the infringing material from Florida.

16.     Further, Intellectual Reserve has sufficient minimum contacts with Florida such that the due process clause and traditional notions of fair play and substantial justice are satisfied because:  (a) Litchfield's claims arise out of or relate to Intellectual Reserve's contacts with Florida by virtue of Intellectual Reserve advertising, selling and distributing the infringing material into Florida and accepting payment from Florida customers for such goods; (b) Intellectual Reserve has purposefully availed itself of the privilege of conducting activities within Florida by soliciting business from Florida residents through its fully interactive website, www.lds.org, which includes links to download and purchase the infringing material; (c) Intellectual Reserve has other contacts in Florida, namely the consumers who have purchased and downloaded the infringing material and Litchfield's causes of action derive directly from those contacts; (d) Intellectual Reserve should have reasonably anticipated being haled into a Florida court by virtue of selling and distributing the infringing material to Florida residents; (e) Florida has a strong interest in protecting consumers from the confusion that results from trademark infringement, copyright infringement and unfair competition; and (f) Litchfield has a strong interest in resolving this dispute in its chosen forum, which is where the company's records are located and its sole officer resides.

17.     Further, Intellectual Reserve's copyright infringement was directly aimed at Florida because it targeted the property of a company with its principal place of business in Florida, causing injury in Florida that Intellectual Reserve should have reasonably anticipated.

18.     This Court has personal jurisdiction over Deseret Book pursuant to Florida's long-arm statute, section 48.193, Florida Statutes, because (a) Deseret Book committed tortious acts in Florida, including copyright infringement; (b) Deseret Book's infringing material, in addition to its website, are accessible in Florida; (c) Florida residents have accessed Deseret Book's website and have purchased infringing material; and (d) Florida residents have paid for the infringing material from Florida.

19.     Further, Deseret Book has sufficient minimum contacts with Florida such that the due process clause and traditional notions of fair play and substantial justice are satisfied because:  (a) Litchfield's claims arise out of or relate to Deseret Book's contacts with Florida by virtue of Deseret Book advertising, selling and distributing the infringing material into Florida and accepting payment from Florida customers for such goods; (b) Deseret Book has purposefully availed itself of the privilege of conducting activities within Florida by soliciting business from Florida residents through its fully interactive website, www.deseretbook.com, which includes links to purchase the infringing material; (c) Deseret Book has other contacts in Florida, namely the consumers who have purchased the infringing material and Litchfield's causes of action derive directly from those contacts; (d) Deseret Book should have reasonably anticipated being haled into a Florida court by virtue of selling and distributing the infringing material to Florida residents; (e) Florida has a strong interest in protecting consumers from the confusion that results from trademark infringement, copyright infringement and unfair competition; and (f) Litchfield has a strong interest in resolving this dispute in its chosen forum, which is where the company's records are located and its sole officer resides.

20.     Further, Deseret Book's copyright infringement was directly aimed at Florida because it targeted the property of a company with its principal place of business in Florida, causing injury in Florida that Deseret Book should have reasonably anticipated.

21.     This Court has personal jurisdiction over Standard Works pursuant to Florida's long-arm statute, section 48.193, Florida Statutes, because:  (a) Standard Works committed tortious acts in Florida, including copyright infringement;  (b) Standard Works' infringing applications, in addition to its website, are accessible in Florida; (c) Florida residents have accessed Standard Works' website and have downloaded Standard Works' infringing applications; and (d) Florida residents have paid for the infringing applications from Florida.

22.     Further, Standard Works has sufficient minimum contacts with Florida such that the due process clause and traditional notions of fair play and substantial justice are satisfied because:  (a) Litchfield's claims arise out of or relate to Standard Works' contacts with Florida by virtue of Standard Works advertising, selling and distributing the infringing material into Florida and accepting payment from Florida customers for such goods; (b) Standard Works has purposefully availed itself of the privilege of conducting activities within Florida by soliciting business from Florida residents through its fully interactive website, www.standardworks.com, which includes links to purchase the infringing material; (c) Standard Works has other contacts in Florida, namely the consumers who have purchased and downloaded the infringing material and Litchfield's causes of action derive directly from those contacts; (d) Standard Works should have reasonably anticipated being haled into a Florida court by virtue of selling and distributing the infringing material to Florida residents; (e) Florida has a strong interest in protecting consumers from the confusion that results from trademark infringement, copyright infringement

and unfair competition; and (f) Litchfield has a strong interest in resolving this dispute in its chosen forum, which is where the company's records are located and its sole officer resides.

23.     Further, Standard Works' copyright infringement was directly aimed at Florida because it targeted the property of a company with its principal place of business in Florida, causing injury in Florida that Standard Works should have reasonably anticipated.

24.     This Court has personal jurisdiction over Inblosam pursuant to Florida's long-arm statute, section 48.193, Florida Statutes, because:   (a) Inblosam committed tortious acts in Florida, including copyright infringement; (b) Inblosam's infringing applications, in addition to its website, are accessible in Florida; (c) Florida residents have accessed Inblosam's website and have downloaded Inblosam's infringing applications; and (d) Florida residents have paid for the infringing applications from Florida.

25.     Further, Inblosam has sufficient minimum contacts with Florida such that the due process clause and traditional notions of fair play and substantial justice are satisfied because: (a) Litchfield's claims arise out of or relate to Inblosam's contacts with Florida by virtue of Inblosam advertising, selling and distributing the infringing material into Florida and accepting payment from Florida customers for such goods; (b) Inblosam has purposefully availed itself of the privilege of conducting activities within Florida by soliciting business from Florida residents through its fully interactive website, www.inblosam.com, which includes links to purchase the infringing material; (c) Inblosam has other contacts in Florida, namely the consumers who have purchased and downloaded the infringing material and Litchfield's causes of action derive directly from those contacts; (d) Inblosam should have reasonably anticipated being haled into a Florida court by virtue of selling and distributing the infringing material to Florida residents; (e) Florida has a strong interest in protecting consumers from the confusion that results from

trademark infringement, copyright infringement and unfair competition; and (f) Litchfield has a strong interest in resolving this dispute in its chosen forum, which is where the company's records are located and its sole officer resides.

26. Further, Inblosam's copyright infringement was directly aimed at Florida because it targeted the property of a company with its principal place of business in Florida, causing injury in Florida that Inblosam should have reasonably anticipated.

27. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400 because, among other things, Defendants are subject to the Court's personal jurisdiction and LDS entered into the Buyout Agreement, as alleged below, which provides for mandatory venue in Florida courts.

## GENERAL ALLEGATIONS

28. The late Alexander Scourby was the first person to record the King James Bible on long-play records, which he first did in the 1950s. Scourby is widely-regarded as the world's best audio book narrator and as having the greatest voice ever recorded. Even among his peers, Scourby is known as the "voice of the Bible."

29. Though also a theater and film actor, Scourby is undoubtedly best known for his captivating voice and audio narrations. He narrated 422 books for the Talking Books program of the American Foundation for the Blind and numerous books, poems and famous speeches for both Spoken Arts and Listening Library.

30. In 1974, Scourby appeared on the widely-televised Today show and read portions of the Bible on Thanksgiving Day.

31.    The Chicago Tribune has stated: "The late Alexander Scourby is reputed to have been the world's best audio-book narrator, bar none. He is heralded as having the greatest voice ever recorded."

32.    In his 1985 obituary, the New York Times stated that "Mr. Scourby was most famous for his rich bass voice," and that "[h]is most famous recording for the American Foundation for the Blind was the set containing all 66 books of the King James version of the Bible."

33.    In fact, the LDS Website acknowledges that Scourby's "recording of the Bible has been recognized as one of the best in the world."

34.    In 1974, Scourby narrated and recorded the King James Version of the Old and New Testaments (the "Scourby Bible Narrations").

35.    Litchfield owns the copyrights and all other rights in the Scourby Bible Narrations, including the following registered copyrights:  SR 63-872, SR 63-873, SR 63-874 and SR 63-875 (for the complete Old Testament and New Testament, King James version, narrated by Scourby); SR 123-852 (for sound engineering and editing elements) and SR 128-280 (for sound engineering and editing elements) (collectively, the "Copyrights").

36.    In 1988, the second highest governing body of the Mormon Church, the Quorum of the Twelve Apostles, approached Litchfield's CEO about LDS's desire to make Alexander Scourby's narrations available to Church's membership. LDS specifically desired Scourby over any other narrator of the Bible.

37.    On October 10, 1988, Litchfield's predecessor, Alexander Scourby Bible Recordings, Inc. ("ASBR") and LDS entered into a Recording Agreement (the "Recording

Agreement"). A true, complete and authentic copy of the Recording Agreement is attached as **Exhibit A**.

38.     The Recording Agreement permitted LDS to incorporate its chapter headings and footnote annotations into the Scourby Bible Narrations owned, at the time, by ASBR. In doing so, LDS recorded introductions and annotations for each of the 1189 chapters in the King James Bible. Once LDS created that format, it placed the format on cassette masters and sent them to ASBR. ASBR then manufactured audio cassette tapes for LDS and shipped them to an LDS distribution center for LDS to make available to the Mormon Church's membership.

39.     Generally, LDS formatted, or arranged, the chapter headings and footnote annotations at its discretion so that each would be placed in the proper chapter of the Scourby Bible Narrations. Paragraph 7 of the Recording Agreement provides the only restriction on format:

> Church shall format the composite audio masters in length no greater than C-94 (47 minutes per side). Such completed composite master tapes shall be utilized by Scourby for the manufacture and production of audio tape cassettes suitable for use in standard cassette players.

40.     Pursuant to the Recording Agreement, LDS agreed to use ASBR as its only cassette duplicator for all duplication of the cassette tapes.

41.     Paragraph 17 of the Recording Agreement states:

> This agreement **only** relates to rights pertaining to regular speed **audio cassette tapes**. In the event the Church wants to manufacture records, discs or other playable sound recordings, Scourby will be agreeable to permit the Church to do so upon mutually agreeable terms and conditions. (emphasis supplied)

42.    In addition to rights for the duplication of cassette tapes only, ASBR conveyed very limited promotional rights to LDS to use other media in paragraph 16 of the Recording Agreement, which provides:

> Church is entitled to use **brief excerpts from recordings of the chapter headings** for its own purposes, including, but not limited to promotion of the Scourby Bible Recordings, scriptural quotations within a larger work such as a sermon, lesson, dramatization or other instructional presentation. Such excerpting may employ any media including, but not limited to, audio recordings, video recordings, radio, television, satellite and cable transmission, and film. (emphasis supplied)

43.    Between October 10, 1988 and July 3, 1991, ASBR duplicated audio cassettes for LDS in accordance with the Recording Agreement. Specifically, LDS periodically submitted to ASBR purchase orders for a certain number of cassette tapes. ASBR would then duplicate that number of cassette tapes, ship them to the LDS distribution center and invoice LDS for the duplication services.

44.    On July 3, 1991, ASBR assigned the Copyrights and Recording Agreement to Litchfield Associates Ltd.

45.    Between July 3, 1991 and December 20, 1994, Litchfield Associates Ltd. duplicated audio cassettes for LDS in accordance with the Recording Agreement. In late 1994, the Mormon Church approached Litchfield Associates Ltd. with an offer to buy out Litchfield's duplication rights in the Recording Agreement for a one-time payment of $150,000.

46.    On December 20, 1994, LDS and Litchfield Associates Ltd. entered into the Buy Out Agreement for the Alexander Scourby Narrations of the Bible (the "Buyout Agreement"). A true, complete and authentic copy of the Buyout Agreement is attached as **Exhibit B**[1].

---

[1] The Buyout Agreement includes a confidentiality provision. After filing this redacted Complaint, Litchfield will file a Motion to File Unredacted Complaint. However, in an abundance of caution and in an effort to avoid satellite

47.     The Buyout Agreement attaches the Recording Agreement as an exhibit and provides that terms not directly addressed in the Buyout Agreement shall be governed by the Recording Agreement.

48.     By virtue of the Buyout Agreement, LDS purchased, or bought out, the rights to duplicate cassette tapes of the Scourby Bible Narrations, rather than continuing to pay Litchfield Associates Ltd. to duplicate the cassette tapes for LDS.

49.     Specifically, LDS paid Litchfield Associates Ltd. $150,000.00 for the rights to use the Scourby Bible Narrations in the duplication of cassette tapes "as described in Section 1. "RECITALS," paragraphs (4) and (5)" of the Buyout Agreement.

50.     Paragraph 3 of the Recitals section of the Buyout Agreement provides the context for paragraph 4 and states:

> The Church and Alexander Scourby Bible Recordings (ASBR) executed an agreement entitled "Recording Agreement," dated October 5, 1988. This agreement, attached as an exhibit, provided that ASBR would manufacture and duplicate the Alexander Scourby Narrations for the Church in exchange for payments made by the Church to ASBR.

51.     Paragraph 4 of the Recitals section of the Buyout Agreement provides:

> The Church is desirous of purchasing from [Litchfield] the **duplication rights** to the Alexander Scourby Narrations, to be included in the Church's produced materials, and **to be distributed within the Church's community**. Once purchased there would be no royalties due [Litchfield] on any sales or authorized usage made by the Church. (emphasis supplied)

52.     Paragraph 5 of the Recitals section of the Buyout Agreement provides:

Church-produced materials are distributed to its membership primarily through the following means:

---

litigation on confidentiality, the terms of the Recording Agreement, Buyout Agreement and clarifying letter are being redacted.

a.   Through Distribution Centers owned by the Church, which directly sell materials to Church units and members throughout the world through mail order and telephone orders, and at their on-site self-service stores.

b.   By resale through privately owned bookstores whose primary market is Latter-day Saints. A few resellers who sell religious materials to the general public, but who feature and identify a segment of their merchandise as "LDS" (Latter-day Saint) oriented material, and who buy some of that merchandise from the Church Distribution Centers may be included. The Scourby Narrations, however, may not be sold in bookstores that sell to the mass marketplace, such as B. Dalton Bookseller, WaldenBooks, and Barnes & Noble; or in any bookstores that are included in what is commonly referred to as the "Christian Booksellers Association."

c.   By transmission on the Church Satellite Network, which provides intermittent telecasts announced through official Church channels to satellite receivers placed at the Church's meeting houses throughout the U.S. and Canada, as well as in some other countries.

53.   Accordingly, LDS purchased only the cassette duplication rights originally provided by the Recording Agreement – the right to duplicate audio cassette tapes only and to distribute those cassette tapes within designated LDS outlets.

54.   Like the Recording Agreement, the Buyout Agreement granted LDS limited rights to use media other than cassette tapes. By virtue of paragraph (5)(c) of the Recitals section of the Buyout Agreement, LDS purchased limited rights to transmit telecasts on the Church Satellite Network. In addition, the parties included paragraph 3 of the Intent of the Parties section of the Buyout Agreement, which provides:

From time to time the Church, as part of its ministry, broadcasts various **announcements and programs on commercial television stations** that reach the general public. The Church may **excerpt** portions of the Scourby Narrations and **use them in these programs** as long as the excerpts are brief (limited to four minutes), or do not exceed 20% of the soundtrack of the product, or are within the context of a message that supports the Church's ministry efforts, and the program is not offered for sale to the general public, **and is not of such a length and character that it would be a viable commercial product** to be sold to the general public. The Church may, however, offer products including the Scourby Narrations that meet the **restrictions** described within this paragraph, to the

general public as free "give away" items, but not in exchange for or as an incentive for a donation. (emphasis supplied)

55.     Accordingly, LDS may use the Scourby Bible Narrations in media other than audio cassette tapes only (a) on announcements and programs on commercial television stations, subject to the restrictions of paragraph 3 of the Intent of the Parties section or (b) as brief excerpts that are not of such a length and character to be a viable commercial product. The entire audio narration of the Old and New Testaments is a viable commercial product.

56.     In addition to limiting LDS's license to use the Scourby Bible Narrations to the audio cassette and limited television media, the Buyout Agreement specifically prohibits the sale, distribution or exploitation of the Scourby Bible Narrations to the general public or in the mass marketplace.

57.     Paragraphs 2 and 4 of the Intent of the Parties section of the Buyout Agreement specifically provide, respectively:

> The Church may **not** commercially exploit the Scourby Narrations in the mass marketplace by selling them to the general public either directly or indirectly, through distributors or through third parties who are focused on a general market rather than one targeted to Latter-day Saints.
>
> Advertising or selling products that include the Scourby Narrations to the general public, in conflict with the terms of this Agreement will cause [Litchfield] serious damage and shall be construed as a material breach of this Agreement. (emphasis supplied)

58.     Contemporaneously with their execution of the Buyout Agreement, LDS and Litchfield Associates Ltd. also executed a clarification letter (the "Letter") that became part of the Buyout Agreement. A true, complete and authentic copy of the Letter is attached as **Exhibit C.**

59.     In further clarification of the Buyout Agreement, the Letter provides:

> To be clear, the Church is buying out the rights to the 1988 recording agreement, which **only includes rights to duplicate cassette tapes**…However, as we discussed, and as is stated in the 1988 Recording Agreement, in the future if the Church wants to acquire rights to duplicate CD discs, records or any other playable audio, we would be agreeable to that based on mutually agreeable terms and conditions. (emphasis supplied)

60.     Upon execution of the Buyout Agreement, Litchfield Associates Ltd. provided LDS with access to the copyrighted material that it owned at the time and which Litchfield continues to own.

61.     Because the Buyout Agreement required a one-time payment, there were no regular communications between Litchfield and LDS about LDS's use of the Scourby Narrations.

62.     Notwithstanding the fact that the Buyout Agreement does not permit sublicensing, LDS improperly sublicensed or otherwise shared the Copyrights with Intellectual Reserve, and its for-profit affiliated entity, Deseret Book.

63.     On January 20, 1999, Litchfield Associates Ltd. assigned its rights in the Alexander Scourby Narrations, including the Copyrights and the Buyout Agreement, to Litchfield.

64.     On December 12, 2006, the United States Patent and Trademark Office registered the trademark "ALEXANDER SCOURBY" and issued registration number 3,182,236 (the "Trademark"). Litchfield owns the Trademark.

65.     Litchfield also owns a protectable common law trademark in the distinctive voice of Alexander Scourby.

66.     In approximately 2008, Litchfield developed and began marketing an iOS Scourby Bible mobile application ("App") for Apple's iPhone® and iPad®. Later, when

Android® Apps appeared on the market, Litchfield developed a Scourby Bible App for the Kindle®, Nook®, Galaxy® and other Android® devices. These audio Bible Apps are available for purchase on Litchfield's website, www.scourby.com, in addition to App stores such as iTunes®, Google Play® and www.amazon.com.

67.    In late 2013, Litchfield learned that, contrary to the terms of the Recording Agreement and Buyout Agreement, the Mormon Church is offering Apps for download that include the Scourby Bible Narrations (the "Infringing LDS Apps"). The Infringing LDS Apps are available to the general public through mass marketplace media sources such as iTunes®, Google Play®, the Windows Store, BlackBerry World® and www.amazon.com. The LDS Website promotes and links to the Infringing LDS Apps that are available for download on the mass marketplace media sources.

68.    According to a February 15, 2011 Mormon Church news release, the Infringing LDS Apps, as of that date, had been downloaded more than 13 million times. Upon information and belief, the number of downloads of the Infringing LDS Apps has substantially increased over the last three years.

69.    After discovering the LDS Apps, Litchfield learned that another company, Standard Works, is offering Apps for download and purchase that include the Scourby Bible Narrations (the "Infringing Standard Works Apps"). The Infringing Standard Works Apps are available to the general public through mass marketplace media sources such as iTunes®, Google Play®, the Windows Store, BlackBerry World® and www.amazon.com for a price of $14.99.    The    Standard    Works    websites,    www.standardworks.com    and www.ldsscripturesapp.com, promote and link to the Infringing Standard Works Apps that are available for download and purchase on the mass marketplace media sources.

70.     Litchfield also learned that Inblosam is offering Apps for download and purchase that include the Scourby Bible Narrations (the "Infringing Inblosam Apps"). The Infringing Inblosam Apps, which are specifically referred to as the LDS Scriptures, are available to the general public through mass marketplace media sources such as iTunes®, Google Play®, the Windows Store, BlackBerry World® and www.amazon.com for a price of $14.99. The Inblosam websites, www.inblosam.com and www.ldsscriptures.com, promote and link to the Infringing Inblosam Apps that are available for download and purchase on the mass marketplace media sources.

71.     The infringing Apps distributed by the Mormon Church, Standard Works and Inblosam are essentially the same – they include the entire Bible narrated by Alexander Scourby (the full sound recording Copyrights) and brief chapter headings and footnote annotations formatted and created by the Mormon Church.

72.     For years, the Mormon Church has officially referred to its scriptures, the Holy Bible, the Book of Mormon, Doctrine and Covenants and Pearl of Great Price, as the "Standard Works" or "LDS Scriptures."   Notwithstanding its use of these terms and despite the fact that Intellectual Reserve's sole purpose is to maintain and protect the Mormon Church's intellectual property, Standard Works and Inblosam continue to use and distribute the Scourby Bible Narrations under the Mormon Church's consenting eye and in an obvious infringement of the limited license granted to LDS in the Buyout Agreement.

73.     Despite their knowledge of the Infringing Standard Works Apps and Infringing Inblosam Apps, the Mormon Church has failed to take any action to stop the infringement.

74.     The Mormon Church is either sanctioning the sale and distribution of these infringing Apps and sharing in the financial fruits of the infringement or willfully neglecting its duties to prevent the multiplication of its own infringing conduct.

75.     In addition to the Infringing LDS Apps, the LDS Website allows users to listen to the Scourby Bible Narrations through the LDS Website and provides direct access for users to download audio books of the Scourby Bible Narrations as mp3 or m4b files (the "Infringing Audio Books").

76.     Further, the Mormon Church sells compact discs of the Scourby Bible Narrations (the "Infringing Compact Discs") through the LDS Website and through the Mormon Church's Deseret Book website, www.deseretbook.com (the "Deseret Book Website"). The set of compact discs that comprise the Old Testament currently sells for $23.00 on the LDS website and for $32.75 on the Deseret Book website.  The set of compact discs that comprise the New Testament currently sells for $11.00 on the LDS Website and for $15.75 on the Deseret Book Website.  The compact disc covers and labels use the Trademark.

77.     As a for-profit entity, Deseret Book uses the revenue from the sales of the Infringing Compact Discs through the Deseret Book Website to generate a profit.  Those profits are ultimately used to support and advance the Mormon Church's religious mission and purposes.

78.     Despite the fact that LDS specifically desired and requested Scourby over any other narrator of the Bible and recognizes Scourby's narration as "one of the best in the world," the Mormon Church does not identify Scourby as the narrator of the Infringing LDS Apps, Infringing Audio Books or the Infringing Compact Discs on the LDS Website or on the Deseret Book Website.

79.     In contrast, the Mormon Church sells on the LDS Website audio cassette tapes of the Bible ($47.75 for the Old Testament set and $16.50 for the New Testament set) and specifically trumpets Scourby as the narrator. This discrepancy can only be viewed as the Mormon Church's recognition that it has no rights in the Scourby Bible Narrations outside of cassette tapes.

80.     In addition to promoting and offering for download and purchase the Infringing LDS Apps, Infringing Audio Books and Infringing Compact Discs, the LDS Website also provides multiple links for users to donate to the Mormon Church. In fact, the Mormon Church receives billions of dollars in tithing from its members each year.

81.     On their various websites and on other sources, Defendants have advertised the Scourby Bible Narrations. These advertisements use Litchfield's advertising ideas and infringe upon the Copyrights.

82.     In September 2013, Litchfield notified LDS of its breach of the Buyout Agreement and the Mormon Church of their copyright infringement. Litchfield demanded that the Mormon Church cease their breaching and infringing conduct. However, to date, LDS continues its breach and Defendants continue their infringement. Litchfield also requested an accounting of sales of the Scourby Bible Narrations and has yet to be provided with one.

83.     All conditions precedent to the bringing and maintenance of this lawsuit and the granting of the relief requested have been performed, have occurred or have been waived.

84.     Litchfield engaged the undersigned attorneys and is obligated to pay them a reasonable fee for their services related to this lawsuit.

## COUNT I – INJUNCTIVE RELIEF
### (against all Defendants)

85.     Litchfield realleges paragraphs 1 through 84.

86.     Litchfield owns the Trademark and the Copyrights.

87.     The Mormon Church's unauthorized use of the Trademark through their sale and distribution of the Scourby Bible Narrations in interstate commerce constitutes a false designation of origin that wrongfully and falsely designates Defendants' products as originating from or connected with Litchfield and Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

88.     The Mormon Church's unauthorized use of the Trademark through their sale and distribution of the Scourby Bible Narrations is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by Litchfield and Alexander Scourby.

89.     Defendants' unauthorized use of Alexander Scourby's distinctive and protectable voice through their sale and distribution of the Scourby Bible Narrations in interstate commerce constitutes a false designation of origin that wrongfully and falsely designates Defendants' products as originating from or connected with Litchfield and Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

90.     Defendants' unauthorized use of Alexander Scourby's distinctive and protectable voice through their sale and distribution of the Scourby Bible Narrations is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by Litchfield and Alexander Scourby.

91.     LDS infringed upon the Copyrights by reproducing and distributing copyrighted material and exceeding the scope of the Buyout Agreement.

92.     LDS breached the Buyout Agreement by exceeding its scope and sublicensing the copyrighted material.

93.     Defendants infringed upon the Copyrights by reproducing and distributing copyrighted material.

94.     Litchfield will be irreparably harmed if LDS is not enjoined from breaching the Buyout Agreement.

95.     Litchfield will be irreparably harmed if Defendants are not enjoined from infringing upon the Trademark, common law trademark of Alexander Scourby's voice, and Copyrights.

96.     Litchfield does not have an adequate remedy at law for LDS's continuing breach of the Buyout Agreement or for Defendants' continuing infringement of the Trademarks, common law trademark and Copyrights.

97.     Litchfield is substantially likely to succeed on the merits of its trademark and copyright infringement claims against Defendants and its breach of contract claim against LDS.

98.     Entry of an injunction will serve the public interest.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests the Court to enter an order prohibiting Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., Deseret Book Company, Standard Works, LLC and Inblosam, LLC and all those acting in concert with them, or as their officers, servants, employees, attorneys, affiliates, subsidiaries, agents or representatives from:

      a.     Infringing upon the Trademark or common law trademark of Alexander Scourby's voice by using the Alexander Scourby name or voice, or a confusingly similar name or voice, in connection with an audio Bible;

b.      Labeling any of their products with Alexander Scourby;

c.      Copying, reproducing, selling, distributing or providing access to the Scourby Bible Narrations;

d.      Creating derivative works based upon the Scourby Bible Narrations;

e.      For such further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
### (against LDS)

99.     Litchfield realleges paragraphs 1 through 84.

100.    LDS breached the Buyout Agreement by exceeding the scope of its license, specifically, by using the Scourby Bible Narrations to produce media materials other than cassette tapes.

101.    LDS breached the Buyout Agreement by exceeding the scope of its license, specifically, by making the Scourby Bible Narrations available to the mass marketplace and general public.

102.    LDS breached the Buyout Agreement by improperly sublicensing the copyrighted material to Intellectual Reserve and Deseret Book.

103.    Further, the Buyout Agreement, pursuant to the attached Recording Agreement, requires LDS to account to Litchfield for the sales of the Scourby Bible Narrations. Despite Litchfield's request for an accounting, LDS breached the Buyout Agreement by failing to provide an accounting.

104.    As a direct and proximate cause of LDS's breaches, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, for damages, special damages including lost profits, termination of the contract, an

accounting of all sales and downloads of the Scourby Bible Narrations, costs, interest, attorneys' fees and such further relief as the Court deems just and proper.

## COUNT III – BREACH OF THE IMPLIED
## COVENANT OF GOOD FAITH AND FAIR DEALING
### (against LDS)

105.     Litchfield realleges paragraphs 1 through 84.

106.     LDS breached the implied covenant of good faith and fair dealing in the Buyout Agreement by distributing free downloads of the Scourby Bible Narrations to the mass marketplace in exchange for donations, good will or to advertise and spread the word of the Mormon Church.

107.     As a direct and proximate cause of LDS's breach of the implied covenant of good faith and fair dealing, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, for damages, special damages including lost profits, termination of the contract, costs, interest, attorneys' fees and such further relief as the Court deems just and proper.

## COUNT IV – FALSE DESIGNATION OF ORIGIN
## IN VIOLATION OF SECTION 43 OF LANHAM ACT
### (ALEXANDER SCOURBY MARK) (against the Mormon Church)

108.     Litchfield realleges paragraphs 1 through 84.

109.     The Mormon Church's unauthorized use of the Trademark through its sale and distribution of the Compact Discs in interstate commerce constitutes a false designation of origin that wrongfully and falsely designates the Mormon Church's products as originating from or connected with Litchfield and Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

110.    The Mormon Church's unauthorized use of the Trademark through its sale and distribution of the Compact Discs is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the Mormon Church with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of the Mormon Church's goods, services or commercial activities by Litchfield and Alexander Scourby.

111.    As a direct and proximate result of the Mormon Church's false designation of origin, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., and Deseret Book Company, jointly and severally, for damages, special damages including lost profits, recoupment of the Mormon Church's profits generated by their infringing conduct, a reasonable royalty for the Mormon Church's use of the Trademark, destruction of the infringing materials, treble damages, statutory damages, attorneys' fees pursuant to 15 USC § 1117(a), costs, interest and such further relief as the Court deems just and proper.

## COUNT V - FALSE DESIGNATION OF ORIGIN
## IN VIOLATION OF SECTION 43 OF LANHAM ACT
### (ALEXANDER SCOURBY VOICE) (against the Mormon Church)

112.    Litchfield realleges paragraphs 1 through 84.

113.    Alexander Scourby's voice is distinctive and protectable as an unregistered mark.

114.    The Mormon Church's unauthorized sale and distribution of Alexander Scourby's voice in interstate commerce constitutes a false designation of origin that wrongfully and falsely designates the Mormon Church's products as originating from or connected with Litchfield and

Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

115.    The Mormon Church's unauthorized sale and distribution of Alexander Scourby's voice is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the Mormon Church with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of the Mormon Church's goods, services or commercial activities by Litchfield and Alexander Scourby.

116.    As a direct and proximate result of the Mormon Church's false designation of origin, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., and Deseret Book Company, jointly and severally, for damages, special damages including lost profits, recoupment of the Mormon Church's profits generated by their infringing conduct, a reasonable royalty for the Mormon Church's use of Alexander Scourby's voice, destruction of the infringing materials, treble damages, attorneys' fees pursuant to 15 USC § 1117(a), costs, interest and such further relief as the Court deems just and proper.

## COUNT VI – COPYRIGHT INFRINGEMENT
## IN VIOLATION OF THE COPYRIGHT ACT
### (ELECTRONIC MEDIA) (against the Mormon Church)

117.    Litchfield realleges paragraphs 1 through 84.

118.    Litchfield owns the Copyrights.

119.    The Mormon Church reproduced and distributed copyrighted material on electronic media by creating, distributing and selling the Infringing LDS Apps and Infringing Audio Books.

120.    LDS exceeded the scope of the Buyout Agreement by using the Scourby Bible Narrations on electronic media.

121.    The Mormon Church infringed upon the Copyrights.

122.    At no time has Litchfield authorized the Mormon Church to reproduce or distribute the copyrighted material on electronic media.

123.    As a direct and proximate result of the Mormon Church's infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc. and Deseret Book Company, jointly and severally, for damages, special damages including lost profits, recoupment of the Mormon Church's profits generated by their infringing conduct, a reasonable royalty for the Mormon Church's use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

### COUNT VII – COPYRIGHT INFRINGEMENT
### IN VIOLATION OF THE COPYRIGHT ACT
### (COMPACT DISCS) (against the Mormon Church)

124.    Litchfield realleges paragraphs 1 through 84.

125.    Litchfield owns the Copyrights.

126.    The Mormon Church reproduced and distributed copyrighted material on the Infringing Compact Discs.

127.    LDS exceeded the scope of the Buyout Agreement by using the Scourby Bible Narrations on the Infringing Compact Discs.

128.    The Mormon Church infringed on the Copyrights.

129.    At no time has Litchfield authorized the Mormon Church to reproduce or distribute the copyrighted material onto compact discs.

130.    As a direct and proximate result of the Mormon Church's infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., and Deseret Book Company, jointly and severally, for damages, special damages including lost profits, recoupment of the Mormon Church's profits generated by their infringing conduct, a reasonable royalty for the Mormon Church's use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## COUNT VIII – CONTRIBUTORY COPYRIGHT INFRINGEMENT
## IN VIOLATION OF THE COPYRIGHT ACT
### (against the Mormon Church)

131.    Litchfield realleges paragraphs 1 through 84.

132.    The Mormon Church has materially contributed, and continues to materially contribute, to Standard Works infringing upon the Copyrights by providing and maintaining the

website that facilitated the distribution of the infringing materials or by providing directly to Standard Works the infringing materials themselves.

133.    The Mormon Church has materially contributed, and continues to materially contribute, to Inblosam infringing upon the Copyrights by providing and maintaining the website that facilitated the distribution of the infringing materials or by providing directly to Inblosam the infringing materials themselves.

134.    Further, the Mormon Church makes the infringing materials available for visitors to the LDS Website to download. Each time a visitor to the LDS Website downloads an Infringing LDS App or Infringing Audio Book, he or she makes a copy of the Infringing LDS App or Infringing Audio Book and infringes upon the Copyrights.

135.    At all material times, the Mormon Church had actual knowledge that the Infringing LDS Apps and Infringing Audio Books available for distribution and download on the LDS Website infringed upon the Copyrights.

136.    After receiving notice of the copyright infringement occurring on the LDS Website, the Mormon Church failed to act expeditiously to remove or disable access to the infringing material.

137.    Upon information and belief, the Mormon Church receives a financial benefit directly attributable to Standard Works', Inblosam's and other website visitors' infringing activities.

138.    As a direct and proximate cause of the Mormon Church's contributory copyright infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day

Saints, Intellectual Reserve, Inc. and Deseret Book Company, jointly and severally, for damages, special damages including lost profits, recoupment of the Mormon Church's profits generated by their infringing conduct, a reasonable royalty for the Mormon Church's use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## COUNT IX – CIVIL CONSPIRACY
### (against the Mormon Church)

139.    Litchfield realleges paragraphs 1 through 84.

140.    Litchfield owns the Copyrights.

141.    The Mormon Church agreed and conspired to intentionally infringe upon the Copyrights and Litchfield's trademarks and otherwise violate Litchfield's intellectual property rights by distributing the copyrighted material through unauthorized media.

142.    LDS obtained access to the Copyrights pursuant to the limited license set forth in the Buyout Agreement. LDS then shared the Copyrights with Intellectual Reserve and Deseret Book, who made the Copyrights available for purchase and download through unauthorized media on the LDS Website and the Deseret Book Website with actual knowledge that such distribution exceeded the scope of LDS's license.

143.    As a direct and proximate result of Defendants' acts done in furtherance of the civil conspiracy, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., and Deseret Book Company jointly and severally, for damages,

special damages including lost profits, recoupment of the Mormon Church's profits generated by their conspiracy, costs, interest and such further relief as the Court deems just and proper.

## COUNT X – ACCOUNTING
### (against all Defendants)

144.    Litchfield realleges paragraphs 1 through 84.

145.    LDS obtained access to the Copyrights pursuant to the Buyout Agreement.

146.    The Mormon Church distributed the Copyrights in multiple unauthorized media outlets. Accordingly, determining the scope of the Mormon Church's infringement and Litchfield's damages involves extensive and complicated accounts, to which the Mormon Church has access and control.

147.    The Mormon Church should be required to account for each sale of the Infringing Compact Discs and for each download of the Infringing Audio Books and Infringing LDS Apps.

148.    The Mormon Church should be required to account for each sale and download of the Infringing Standard Works Apps and Infringing Inblosam Apps.

149.    Standard Works should be required to account for each sale and download of the Infringing Standard Works Apps.

150.    Inblosam should be required to account for each sale and download of the Infringing Inblosam Apps.

151.    It is not clear that Litchfield's remedy at law is as full, adequate and expeditious as it is in equity.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Corporation of the President of the Church of Jesus Christ of Latter-day Saints, Intellectual Reserve, Inc., and Deseret Book Company jointly and severally, Standard

Works, LLC and Inblosam, LLC for an accounting and such further relief as the Court deems just and proper.

## COUNT XI – FALSE DESIGNATION OF ORIGIN
## IN VIOLATION OF SECTION 43OF LANHAM ACT
### (ALEXANDER SCOURBY VOICE) (against Standard Works)

152.   Litchfield realleges paragraphs 1 through 84.

153.   Alexander Scourby's voice is distinctive and protectable as an unregistered mark.

154.   Standard Works' unauthorized sale and distribution of Alexander Scourby's voice in interstate commerce constitutes a false designation of origin that wrongfully and falsely designates Standard Works' products as originating from or connected with Litchfield and Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

155.   Standard Works' unauthorized sale and distribution of Alexander Scourby's voice is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Standard Works with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of Standard Works' goods, services or commercial activities by Litchfield and Alexander Scourby.

156.   As a direct and proximate result of Standard Works' false designation of origin, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Standard Works, LLC for damages, special damages including lost profits, recoupment of Standard Works' profits generated by its infringing conduct, a reasonable royalty for Standard Works' use of Alexander Scourby's voice, destruction of the infringing

materials, treble damages, attorneys' fees pursuant to 15 USC § 1117(a), costs, interest and such further relief as the Court deems just and proper.

## COUNT XII – COPYRIGHT INFRINGEMENT
### IN VIOLATION OF THE COPYRIGHT ACT
#### (against Standard Works)

157.    Litchfield realleges paragraphs 1 through 84.

158.    Litchfield owns the Copyrights.

159.    Standard Works reproduced and distributed copyrighted material on electronic media by creating, distributing and selling the Infringing Standard Works Apps.

160.    Standard Works had access to the Copyrights because Litchfield's authorized Scourby Bible Narrations are available for purchase and download.

161.    Standard Works infringed upon the Copyrights.

162.    At no time has Litchfield authorized Standard Works to reproduce or distribute the Copyrights.

163.    As a direct and proximate result of Standard Works' infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Standard Works, LLC for damages, special damages including lost profits, recoupment of Standard Works' profits generated by its infringing conduct, a reasonable royalty for Standard Works' use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## COUNT XIII – CONTRIBUTORY COPYRIGHT INFRINGEMENT
### IN VIOLATION OF THE COPYRIGHT ACT
#### (against Standard Works)

164.    Litchfield realleges paragraphs 1 through 84.

165.    Standard Works has materially contributed, and continues to materially contribute, to others infringing upon the Copyrights by providing and maintaining the websites that facilitate the distribution of the infringing materials.

166.    Further, Standard Works makes the infringing materials available for visitors to its websites to download. Each time a visitor to its websites downloads an Infringing Standard Works App, he or she makes a copy of the Infringing Standard Works App and infringes upon the Copyrights.

167.    As a direct and proximate cause of Standard Works' contributory copyright infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Standard Works, LLC for damages, special damages including lost profits, recoupment of Standard Works' profits generated by its infringing conduct, a reasonable royalty for Standard Works' use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## COUNT XIV – FALSE DESIGNATION OF ORIGIN
## IN VIOLATION OF SECTION 43OF LANHAM ACT
### (ALEXANDER SCOURBY VOICE) (against Inblosam)

168.    Litchfield realleges paragraphs 1 through 84.

169.    Alexander Scourby's voice is distinctive and protectable as an unregistered mark.

170.    Inblosam's unauthorized sale and distribution of Alexander Scourby's voice in interstate commerce constitutes a false designation of origin that wrongfully and falsely

designates Inblosam's products as originating from or connecting with Litchfield and Alexander Scourby, and constitutes the use of false descriptions or representations in interstate commerce.

171.    Inblosam's unauthorized sale and distribution of Alexander Scourby's voice is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Inblosam with Litchfield and Alexander Scourby, or as to the origin, sponsorship, or approval of Inblosam's goods, services or commercial activities by Litchfield and Alexander Scourby.

172.    As a direct and proximate result of Inblosam's false designation of origin, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Inblosam, LLC for damages, special damages including lost profits, recoupment of Inblosam's profits generated by its infringing conduct, a reasonable royalty for Inblosam's use of Alexander Scourby's voice, destruction of the infringing materials, treble damages, attorneys' fees pursuant to 15 USC § 1117(a), costs, interest and such further relief as the Court deems just and proper.

## COUNT XV – COPYRIGHT INFRINGEMENT
## IN VIOLATION OF THE COPYRIGHT ACT
### (against Inblosam)

173.    Litchfield realleges paragraphs 1 through 84.

174.    Litchfield owns the Copyrights.

175.    Inblosam reproduced and distributed copyrighted material on electronic media by creating, distributing and selling the Infringing Inblosam Apps.

176.    Inblosam had access to the Copyrights because Litchfield's authorized Scourby Bible Narrations are available for purchase and download.

177.    Inblosam infringed upon the Copyrights.

178.    At no time has Litchfield authorized Inblosam to reproduce or distribute the Copyrights.

179.    As a direct and proximate result of Inblosam's infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Inblosam, LLC for damages, special damages including lost profits, recoupment of Inblosam's profits generated by its infringing conduct, a reasonable royalty for Inblosam's use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## COUNT XVI – CONTRIBUTORY COPYRIGHT INFRINGEMENT
## IN VIOLATION OF THE COPYRIGHT ACT
### (against Inblosam)

180.    Litchfield realleges paragraphs 1 through 84.

181.    Inblosam has materially contributed, and continues to materially contribute, to others infringing upon the Copyrights by providing and maintaining the websites that facilitate the distribution of the infringing materials.

182.    Further, Inblosam makes the infringing materials available for visitors to its websites to download. Each time a visitor to its websites downloads an Infringing Inblosam App, he or she makes a copy of the Infringing Inblosam App and infringes upon the Copyrights.

183.    As a direct and proximate cause of Inblosam's contributory copyright infringement, Litchfield has been damaged.

WHEREFORE, Plaintiff, Litchfield Associates Ltd. Inc., respectfully requests judgment in its favor and against Inblosam, LLC for damages, special damages including lost profits, recoupment of Inblosam's profits generated by its infringing conduct, a reasonable royalty for Inblosam's use of the Copyrights, destruction of the infringing materials, statutory damages pursuant to 17 USC § 504(c), attorneys' fees pursuant to 17 USC § 505, costs, interest and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Dated this 8th day of July, 2014.

/s/ Brad F. Barrios
Kenneth G. Turkel
Florida Bar No. 0867233
Email: kturkel@bajocuva.com
Pedro F. Bajo, Jr.
Florida Bar No. 0966029
Email: pedro.bajo@bajocuva.com
Brad F. Barrios
Florida Bar No. 0035293
Email: brad.barrios@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

/s/ Brad F. Barrios
Attorney